In re Moore, 20 N. M. 312.

[No. 1716, May 12, 1915.]
## In re MOORE.

### SYLLABUS BY THE COURT.

1.   Where an attorney advises and counsels a person to take personal property claimed by his client, but in the possession of another, any place he can find it, and at that time knows, by information, that such property is upon the inclosed premises of a claimant, the attorney in effect advises and counsels procuring the property by force, stealth, or surreptitiously.

P. 317

2.   Counsel and advice, given by an attorney, to take possession of property, the possession thereof being in a claimant thereto, and the title thereof being then in litigation, by stealth, force, or surreptitiously, when the object of such advice is to procure an unfair advantage of another, is an act of unprofessional conduct.

P. 317

3.   An attorney is not relieved of his duty as such, nor of the obligation upon him to maintain respect due to courts of justice, because he engages in gratuitions employment for a client.

P. 318

Disbarment proceedings against Vin W. Moore. Disbarment ordered.

IRA L. GRIMSHAW, Assistant Attorney General, for the State.

HARRY H. McELROY of Tucumcari, for respondent.

### STATEMENT OF FACTS.

This is a companion case of that entitled "In the Matter of the Proceedings Looking to the Disbarment of Charles H. Hittson," 150 Pac. 733, decided at this term of court, but, as yet, unreported. The facts are somewhat

the same in the two cases. The respondent, V. W. Moore, is a practising attorney in the city of Tucumcari. In the early part of the year 1912, a Mrs. Jane Cooper went to the office of respondent and advised him that she was poverty-stricken and owned two horses then in possession of Henry Smith. She told respondent that she had talked to J. D. Cutlip, probate judge, about the property, and that she was anxious to recover possession of it, claiming that her son had recently died, and that Henry Smith claimed the property as security for obligations incurred by him in the burial of the son. Respondent attempted a settlement of accounts between Smith and Mrs. Cooper, but it ended without anything tangible having been accomplished. Mrs. Cooper represented to respondent that she owned the two horses, and that a Miss Mattie Conlin claimed one by reason of a bill of sale executed by the deceased son, James Cooper. Respondent talked with several persons to whom he was referred by Mrs. Cooper, and they all advised him that Mrs. Cooper was the real and true owner of the horses. The respondent accepted employment from Mrs. Cooper without compensation, and knew his services would be rendered gratuitiously. After respondent was unable to effect a settlement with Smith, he began a suit in replevin in behalf of Mrs. Cooper, in the court of the justice of the peace, but the action was dismissed because of the failure of the plaintiff to procure an acceptable bond. Respondent was also told by Mr. Hittson that the animals had been taken to a foreign state. In September, 1913, Mrs. Cooper brought an action in conversion against Henry Smith. The respondent was one of her attorneys of record in that cause. Later James Head and J. D. Cutlip were made parties defendant, but this cause was dismissed in April, 1914, by the plaintiff. In the first part of the month of April, 1914, the respondent requested Mr. A. J. Wilson to come to his office for the purpose of attempting to locate the two animals claimed by Mrs. Cooper. The respondent, Mr. Hittson, and Mr. Wilson held a conversation concerning this property, in the office of respondent. Wilson was offered $5 for locating the two horses claimed by Mrs. Cooper.

Respondent, previous to this time, had talked with James Head about these horses, and knew that the later had them in his possession. Wilson left Tucumcari and later reported to Mr. Hittson that he had located the property on the Head ranches. Mr. Hittson advised him to come back to Tucumcari, and Wilson did so. The respondent and Hittson then held a consultation as to how they should proceed to recover possession of this property. It was suggested that a writ of replevin be sued out, and respondent stated that the statute of limitations had run, and that it would be impossible to prevail by such a remedy. It was then decided that Henry Smith, James Head, and J. D. Cutlip could not respond to a judgment for damages, if one were obtained in the then pending action for conversion, and that Mrs. Cooper was destined to lose any property right she had in the animals unless some arrangement could be made whereby Mrs. Cooper could become actually possessed of the property. Respondent and Hittson then decided and agreed that they would send Wilson and an assistant to the places where the animals were located and have him take them into his possesion and deliver them to respondent and Hittson in Tucumcari. Wilson inquired as to what liability he would incur in so acting, and the respondent advised him that he would incur no liability because Mrs. Cooper owned the property, and he could not commit larceny while acting as her agent in the transaction. Respondent agreed that Wilson should be compensated for his services. In this conversation the respondent advised Wilson that he had a right to take the animals any place he found them, and guaranteed that he would save Wilson free from any liability in the premises, and should he, Wilson, become involved, that the respondent would protect him. Hittson gave Wilson an order addressed to any to whom it might concern to deliver the horses to Wilson, but respondent felt that Hittson had not given the subject sufficient consideration to justify the delivery of such an order, and refused to sign the order. Wilson with an assistant then went to the Head ranches and took one horse and a colt from the ranch of one of the Heads without the permis-

sion or consent of Mr. Head. The other horse was also taken by Wilson. Wilson testifies that he found this animal on the public range, and did not take it from either ranch of the Heads, while the Heads both testify that the animals were both grazing upon inclosed pastures, and that the animals were taken from their ranches over broken fences. Wilson delivered the two horses to Hittson, in Tucumcari, and respondent drove the animals to his own pasture after dark on the Sunday after the arrival of the animals in Tucumcari. On Monday, respondent held a conversation with the attorney for the Heads, and was told that some attorney was involved in the alleged larceny of the animals, and that he would suffer the penalty of disbarment because of his particpation in that act. The animals were later delivered by Hittson to the Heads, and an action of replevin immediately instituted against the Heads by Mrs. Cooper for the recovery of the possession of the animals.

In the first instance the animals were brought to New Mexico from another state, by the Cooper family. In March, 1912, they were delivered into the possession of Henry Smith by virtue of an agreement to the effect that Smith should care for and feed the animals and hold them as security for expenses incurred by him in behalf of the Cooper family. This included expenses incurred by Smith in the payment of burial expenses of the son, James Cooper. The respondent admits in this proceeding that he knew the title of the property was in dispute, and the facts indicate that he realized that the parties concerned were litigating the question of the title of the property. Respondent insists that he did not know that one of the animals had been listed in the estate of the deceased son, but admits that he had heard that the administrator, as such, had possession of the property. Other facts material to the issues in the case may be found set out in the opinion of the court in the Hittson Case.

## OPINION OF THE COURT.

HANNA, J. (after stating the facts as above)—The accusation charges the respondent with having committed acts of unprofessional conduct for which he should be disbarred. There are two counts in the accusation affecting the respondent. The first, substantially, charges that the respondent advised and counseled Wilson and Mc-Dade to procure and obtain possession of certain animals without process of law, and the second that respondent aided and abetted in the concealment of the property after it had been unlawfully possessed.

There is no contradiction of the fact that respondent advised and counseled Wilson to take possession of this property without the aid of the orderly process of the court. Wilson located the property on the Head ranches and reported to Hittson. It was then determined that an action of replevin would not lie, and that the pending conversion action would not compensate Mrs. Cooper for the loss of possession of her animals. The respondent admits that Mrs. Cooper had told him that Miss Conlin claimed one of the animals by virtue of a bill of sale executed by her son, James Cooper, and that Henry Smith was the claimant of some sort of a right in the property because of expenses incurred by him in behalf of the Cooper family. Therefore it seems quite immaterial whether the respondent obtained any information from the probate court records as to the listing of this property in the estate of James Cooper. Respondent claims he was dealing with Cutlip as attorney for Smith, and not with Cutlip as probate judge, but this also is of no serious importance. The evidence indicates that Mrs. Cooper, in the first instance, was in possession of the animals, and that she and her two sons caused them to be delivered to Henry Smith, and that Henry Smith acquired an interest in the animals either by way of a lien or as mortgagee. But it is unnecessary for us to decide the question of title to this property, and we do not intend to do so by reason of anything contained in this opinion.

The proof in this case forces us to the conclusion that the respondent advised and counseled Wilson to take pos-

session of this property. His object in so doing is apparent. Unless a judgment was obtained in the conversion action and the property claimed by Mrs. Cooper taken into possession by virtue of an execution on that judgment, Mrs. Cooper would lose any pecuniary benefit on account of her claim of title. But the conversion action was not prosecuted to judgment, because respondent believed that the parties defendant could not respond to an execution on account of their alleged insolvency. It was therefore the object of respondent to obtain possession of the property by any possible means, and retain that possession if possible. In the event the property was taken from respondent, or his client, he then intended to resort to a replevin suit. The statute of limitation, in his judgment, would not then constitute a defense. The ultimate object of respondent, we may well infer from the circumstances adduced in the proofs, therefore, was to cause the burden of proof of title to be shifted from his own, or his client's shoulders, to that of his adversary, whether that adversary be Smith, Cutlip, or the Heads.

[**1, 2**] The question for our decision, therefore, resolves itself into determining whether an attorney is subject to disbarment for advising and counseling a person to take possession of personal property claimed by his client and in litigation in a suit between his client and the person then in possession of the property, by force or stealth, or if not exactly that, then surreptitiously and without the knowledge or consent of the person then in possession. There is the element to be considered in this connection that possession could not be acquired by respondent, and Mrs. Cooper could not secure redress in a manner authorized by law, except by a continuation of the conversion action, and not even then in the judgment of respondent. We cannot approve such action on the part of respondent, but rather are forced to severely condemn it. With the guilt or innocence of Mrs. Cooper, Wilson, and McDade, his assistant, we have nothing to do. As contended, it perhaps may be true that they could not be convicted of larceny, because of the failure of an existing felonious intent., but the guilt or innocence of

respondent does not depend upon his felonious, or lack of felonious, intent.

[3] Our conception of the obligation of attorneys to the law and the court does not permit us to say, in view of the facts and circumstances of the case at bar, that respondent did not violate his oath as an attorney and the duties of an attorney with which he is charged by law. That his action was not "upright and according to law" all must admit, nor can it be said that he maintained "the respect due to courts of justice." It was respondent's duty to assist Mrs. Cooper to obtain relief through the agency of the court and in accordance with the laws of the state. It matters not, in our judgment, that respondent donated his services to Mrs. Cooper. As an attorney at law, his sworn duty, as well as the duties devolving upon him in conformity with the law, is not lessened because of gratuitious employment. The circumstances all indicate that respondent felt himself hard pressed because of the circumstances in which he found his client, but this does not justify his action.

Notwithstanding the denials of respondent, it is very clear in our minds that the respondent's advice, in its effect, was to counsel Wilson to obtain this property by force of arms, by stealth, or by any other means except engaging in actual physical combat with those in possession of the animals. In view of our decision as to this count in the accusation, it is unnecessary to determine the other count affecting respondent.

We therefore conclude that respondent's actions are subject to condemnation by this court, and our duty permits of no alternative, and the respondent will therefore be disbarred; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.